[Cite as *Vandercar, L.L.C. v. Port of Greater Cincinnati Dev. Auth.*, 2026-Ohio-2737.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| VANDERCAR, LLC, | : | APPEAL NOS. | C-250025 |
| | | | C-250422 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. | A-2000900 |
| vs. | : | | |
| THE PORT OF GREATER CINCINNATI DEVELOPMENT AUTHORITY, | : | *JUDGMENT ENTRY* | |
| | : | | |
| Defendant-Appellee/Cross-Appellant. | : | | |

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in C-250025 and reversed in C-250422.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed to Vandercar, LLC.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/17/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *Vandercar, L.L.C. v. Port of Greater Cincinnati Dev. Auth.*, 2026-Ohio-2737.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| VANDERCAR, LLC, | : | APPEAL NOS. | C-250025 |
| | | | C-250422 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. | A-2000900 |
| | : | | |
| vs. | | | |
| | : | *O P I N I O N* | |
| THE PORT OF GREATER CINCINNATI DEVELOPMENT AUTHORITY, | : | | |
| Defendant-Appellee/Cross-Appellant. | : | | |
| | : | | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in C-250025; Reversed in C-250422

Date of Judgment Entry on Appeal: July 17, 2026

*Taft Stettinius & Hollister LLP, W. Stuart Dornette, Beth A. Bryan,* and *Taylor S. Lovejoy*, for Plaintiff-Appellant/Cross-Appellee Vandercar, LLC,

*Calfee Halter & Griswold LLP, David T. Bules,* and *Matthew A. Chiricosta,* for Defendant-Appellee/Cross-Appellant the Port of Greater Cincinnati Development Authority.

MOORE, Judge.

## I. Introduction

{¶1}    This appeal arises from a breach-of-contract dispute regarding the "redevelopment" of the Millenium Hotel ("the Property") in downtown Cincinnati. Vandercar purchased the Property from the original owners, and agreed to assign its interest to the Port of Greater Cincinnati Development Authority ("the Port").

{¶2}    The parties' relationship deteriorated over a dispute concerning the release of fees to Vandercar contemplated by the parties' assignment agreement. In 2022, in *Vandercar v. Port of Cincinnati Dev. Auth.*, 2022-Ohio-3148, ¶ 6 (1st Dist.) ("*Vandercar I*"), we affirmed the court's judgment that the Port breached the parties' assignment agreement. We remanded the cause to the trial court to resolve the questions of whether the Port's conduct constituted bad faith and whether Vandercar was entitled to an award of attorneys' fees. It was during this remand that one trial judge found that the Port had not acted in bad faith, only for another trial judge, who had subsequently been assigned to the case, to grant Vandercar's Civ.R. 60(B) motion for relief from the judgment of the previous trial judge.

{¶3}    In the appeal numbered C-250025, Vandercar appeals from the trial court's denial of its motion for attorneys' fees. In addition to the instant appeal, Vandercar also filed a Civ.R. 60(B) motion in the trial court seeking to set aside the judgment.

{¶4}    We stayed Vandercar's appeal and again remanded the cause to the trial court to resolve the Civ.R. 60(B) motion. On remand, the court found that Vandercar was entitled to relief under Civ.R. 60(B)(5) and granted Vandercar's motion. The Port appealed in the appeal numbered C-250422 and argues that the court erred as a matter of law in granting Vandercar's Civ.R. 60(B) motion.

3

{¶5} For the reasons set forth below, we affirm the trial court's judgment in the appeal numbered C-250025 and reverse it in the appeal numbered C-250422.

## II.  Factual and Procedural History

### A.  The Contract, Breach, and Initial Appeal

{¶6} In July 2018, Vandercar contracted to purchase the Property. Later, Vandercar and the Port entered into an assignment agreement, in which Vandercar assigned to the Port its interest in the Property, in exchange for certain payment obligations. *Vandercar I*, 2022-Ohio-3148, at ¶ 6 (1st Dist.). These included a $2.5 million payment at the time of closing ("the Development Fee"), and a $5 million payment at the time revenue bonds for redevelopment were issued ("the Redevelopment Fee"). *Id.* While the Port paid the Development Fee, the Port declined to pay the $5 million Redevelopment Fee. *Id.* at 13-14.

{¶7} The terms for the Redevelopment Fee included:

> The Port shall use commercially reasonable efforts to issue the Redevelopment Bonds within one year from the date of the closing of the purchase of the Real Property[.] . . . The Port shall not use or allow to be used any other method of financing the development of the Project unless such financing causes and allows for the payment of the $5,000,000.00 redevelopment fee described below. If the closing of the Redevelopment Bonds occurs within that one-year period (as may be extend [sic] due to force majeure event), on such date of closing of the Redevelopment Bonds[,] the Port shall pay Vandercar an additional amount of $5,000,000.00.

*Id.* at ¶ 6. The agreement set forth that the revenue bonds would be the sole means of financing the project. *Id.* at ¶ 5.

{¶8} In the months after the parties entered into the assignment agreement, the Port adopted two resolutions relevant to the issuance of revenue bonds. The January resolution authorized the issuance of revenue bonds and approved the use of bond proceeds for acquisition, demolition, and evaluation of the project. The February resolution authorized the Port's president to enter contracts for remediation and demolition and reiterated that the January resolution approved the use of revenue bond proceeds to pay for both the acquisition of the property and the required demolition work. *Id.* at ¶ 7-12. Upon the Port's issuance of the revenue bonds, Vandercar sent the Port an invoice for the Redevelopment Fee, which the Port refused to pay. *Id.* at ¶ 13.

{¶9} Vandercar filed its complaint against the Port, alleging that the Port breached the parties' contract and acted in bad faith. Vandercar asserted that the Port acted in bad faith when it adopted resolutions distinguishing demolition from redevelopment in an attempt to circumvent paying the Redevelopment Fee. The Port contended that demolition was a predevelopment activity. The trial court granted summary judgment for Vandercar on its breach-of-contract claim but dismissed Vandercar's bad-faith claim on the pleadings. *Vandercar I*, 2022-Ohio-3148, at ¶ 19 (1st Dist.).

{¶10} In *Vandercar I*, we affirmed the trial court's judgment in part. *Id.* at ¶ 43. However, we held that Vandercar's bad-faith claim was a valid basis for recovery of attorneys' fees and costs. *Id.* at ¶ 3, 47. We recognized pursuant to our decision in *SST Bearing Corp. v. Twin City Fan Cos.*, 2012-Ohio-2490 (1st Dist.), that a party that prevails on its breach-of-contract case may recover attorneys' fees upon establishing that the breaching party's conduct rose to the level of bad faith. *Vandercar I* at ¶ 56, citing *SST Bearing* at ¶ 29.

{¶11} We reversed the trial court's judgment dismissing the bad-faith claim on the pleadings and remanded the cause to the trial court to resolve the issue of whether the Port acted in bad faith.

### B. Remand I – Bad Faith

{¶12} On remand, Vandercar submitted a motion for attorneys' fees that alleged bad faith both prior to and during the litigation. The motion was framed around two principal arguments: (1) that the Port violated Civ.R. 37(C) when it improperly denied two of Vandercar's requests for admissions, and (2) that based on numerous examples of opprobrious conduct identified within Vandercar's motion, the Port acted in bad faith.

#### 1. Denial of Requests for Admissions

{¶13} Vandercar took issue with the Port's objection to two of its requests for admissions. The requests stated,

REQUEST NO. 24. Admit that Redevelopment is defined as "the act or process of changing an area of a town by replacing old buildings, roads, etc. with new ones."

REQUEST NO. 25. Admit that demolition is a part of the process of replacing an old building with a new building.

{¶14} During discovery, the Port objected to these requests, arguing that the questions were vague, ambiguous, and inappropriately tasked the Port with adopting a definition for "redevelopment" when the parties' assignment agreement failed to do so. Vandercar contended that because the Port's arguments were ultimately proven incorrect it was entitled to attorneys' fees.

#### 2. General Allegations of Bad Faith

{¶15} Vandercar also took issue with other conduct it alleged was done by the

6

Port in bad faith. This included allegations that the Port altered its website during litigation in an attempt to destroy evidence, the Port raised several frivolous affirmative defenses, the Port unlawfully denied other requests for admissions related to defining "redevelopment," the Port requested irrelevant discovery related to Vandercar's CEO's local campaign contributions, and the Port filed a baseless protective order.

{¶16} The court heard oral arguments from the parties, but before the matter was resolved, the case was reassigned to another judge. Following the reassignment, the court denied Vandercar's motion, noting that requests for admissions 24 and 25 were objectionable because they asked for "the definition" as opposed to "a definition" of redevelopment, a term not defined within the parties' contract. As to the generalized bad-faith allegations, the court concluded that the Port's tactics were "aggressive" and "sharp" but did not rise to the level of bad faith.

{¶17} Vandercar contemporaneously filed both a Civ.R. 60(B) motion and a notice of appeal. Vandercar's Civ.R. 60(B) motion only argued that it was entitled to relief under Civ.R. 60(B)(5). The appeal was numbered C-250025, and we stayed the appeal and remanded the cause to the trial court to decide the pending Civ.R. 60(B) motion.

## C. Remand II – Civ.R. 60(B)

{¶18} On remand, the case was reassigned to a third judge. The parties completed briefing. Vandercar's principal brief asserted that it was entitled to relief under Civ.R. 60(B)(5). In its reply brief, it asserted that it was also entitled to relief under Civ.R. 60(B)(1), and relied on the United States Supreme Court's holding in *Kemp v. United States*, 596 U.S. 528 (2022). *Kemp* interpreted Fed.R.Civ.P. 60(b)(1) to mean that a judge's mistake of law could be a ground for post-judgment relief. *Id.*

7

at 530.

**{¶19}** Following oral arguments, the court granted Vandercar's motion. In its decision, the court found that a court's mistake of law was an invalid basis for relief under Civ.R. 60(B)(1). However, the court found that Vandercar was entitled to relief under Civ.R. 60(B)(5). The Port timely appealed in the appeal numbered C-250422.

### III. Analysis

**{¶20}** We first address the Port's appeal, challenging the court's grant of Vandercar's Civ.R. 60(B) motion. Next, we resolve Vandercar's appeal, which argues that the court erred as a matter of law when it failed to conduct the requisite bad-faith analysis and failed to award Vandercar sanctions as contemplated under Civ.R. 37(C)(3).

### A. The Port's Sole Assignment of Error: Civ.R. 60(B) Relief

**{¶21}** The Port argues that the court erred in finding that Vandercar was entitled to relief under Civ.R. 60(B)(5). Because our analysis turns on whether Civ.R. 60(B) was an improper substitute for an appeal from the underlying judgment, our analysis stops short of analyzing the specific application of Civ.R. (B)(5).

**{¶22}** We traditionally review a trial court's ruling on a Civ.R. 60(B) motion for an abuse of discretion. *Geico Gen. Ins. Co. v. Falah*, 2025-Ohio-755, ¶ 15 (1st Dist.). However, because the Port argues that the court permitted Vandercar to use Civ.R. 60(B) as a substitute for an appeal, our review is de novo. *Ford Motor Credit Co. v. Cunningham*, 2004-Ohio-6226, ¶ 12 (2d Dist.) (whether a Civ.R. 60(B) motion was an improper substitute for a direct appeal presents a question of law we review de novo).

**{¶23}** A Civ.R. 60(B) motion is not a substitute for a timely appeal. *State ex rel. Hatfield v. Miller*, 2023-Ohio-429, ¶ 12. The moving party may not "merely reiterate arguments which concern the merits of the case and could have been raised

8

on appeal." *Navy Fed. Credit Union v. McAfee*, 2024-Ohio-5794, ¶ 12 (1st Dist.), citing *Stringer v. Boardman Nissan*, 2006-Ohio-672, ¶ 13 (7th Dist.). Thus, a Civ.R. 60(B) motion is appropriate when a party must apprise the court of content outside of the record that is relevant to justify relief from judgment. *In re Trust*, 2014-Ohio-5825, ¶ 28 (7th Dist.). The justification for this directive is, if a matter falls outside the record, it cannot be raised on direct appeal. *Id.*, quoting *In re A.K.*, 2011-Ohio-4536, ¶ 15 (2d Dist.) ("The gist of post-trial relief is to remedy an injustice resulting from a cause that could not reasonably be addressed during ordinary trial and appellate proceedings."). A party's challenge to the correctness of a decision does not warrant Civ.R. 60(B) relief. *Blasko v. Mislik*, 69 Ohio St.2d 684, 685 (1982).

{¶24} The proper vehicle to present the challenges raised in Vandercar's Civ.R. 60(B) motion is a direct appeal. Vandercar was able to present all arguments before the court, and to establish a record that set forth the alleged instances of bad faith committed by the Port. The court considered these arguments when it initially denied Vandercar's motion for fees. Civ.R. 60(B) is used to address injustices that could not have been resolved on a direct appeal. Here, Vandercar's Civ.R. 60(B) motion was an inappropriate substitute for a direct appeal and should have been denied as such by the trial court.

{¶25} Because the trial court erred as a matter of law in granting Vandercar's Civ.R. 60(B) motion, we sustain the Port's sole assignment of error.

### B. Vandercar's Sole Assignment of Error: Bad Faith

{¶26} Vandercar's sole assignment of error asserts that the trial court erred in denying its motion for attorneys' fees. Vandercar argues that the court erred as a matter of law when, in its written entry, it did not expressly consider the six bad-faith categories set forth in *Covenant Dove Holding Co., LLC v. Mariner Health Care, Inc.*,

2013-Ohio-3824, ¶ 7 (1st Dist.). Vandercar also alleges that the court erred when it found that the conduct alleged did not rise to the level of bad faith, and that the court erred in concluding that the Port did not violate Civ.R. 37. We address these arguments in turn.

### 1. The Correct Standard of Review

**{¶27}** Traditionally, under the "American rule," parties are expected to bear their own costs. *Weckel v. Cole + Russell Architects, Inc.*, 2024-Ohio-5111, ¶ 96 (1st Dist.). The exception to the rule arises when the prevailing party shows that the losing party acted in bad faith. *Id.* This conduct can occur prior to the commencement of or during the course of litigation. *Vandercar I*, 2022-Ohio-3148, at ¶ 56 (1st Dist.), citing *SST Bearing*, 2012-Ohio-2490, at ¶ 29 (1st Dist.). A bad-faith award of attorneys' fees will generally not be available in a breach-of-contract action and is reserved for only exceptional cases. *Vandercar I* at ¶ 46, 56. We review a court's ruling on a motion for attorneys' fees based on the alleged bad faith of a party under an abuse-of-discretion standard. *Weckel* at ¶ 95, citing *SST Bearing* at ¶ 29 (holding that where a court's findings on the presence of bad faith were supported by the record, the court did not abuse its discretion).

**{¶28}** Vandercar insists that the court applied the wrong legal standard when assessing whether the Port acted in bad faith, and that our standard of review should be de novo. *See Martin v. Mahr Mach. Rebuilding Inc.*, 2017-Ohio-1101, ¶ 14 (11th Dist.) ("Whether the trial court applied the correct legal standard is a legal issue we review de novo."). To support this contention, Vandercar cites to our holding in *Vandercar I* at ¶ 46, specifically,

> "A party seeking attorney fees based on the bad-faith exception to the
>
> American rule 'must be the prevailing party in the litigation and then

must prove that his opponent acted in bad faith.'" *Covenant Dove Holding Co., LLC v. Mariner Health Care, Inc.*, 1st Dist. Hamilton No. C-120878, 2013-Ohio-3824, ¶ 7, quoting *Sturm v. Sturm*, 63 Ohio St. 3d 671, 675, 590 N.E.2d 1214 (1991). "Bad faith" generally implies "*a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty due to ulterior motive, ill will comparable to fraud, or an actual intent to mislead or deceive another.*" *Id.* at ¶ 7. Although an award of attorney fees may be granted in a contract action upon a finding by the trial court of bad-faith conduct, a trial court errs by awarding attorney fees where it has made no finding of bad faith. *Id.* at ¶ 8; *Wright v. Fleming*, 1st Dist. Hamilton No. C-070121, 2008-Ohio-1435, ¶ 5. We emphasize that an award of attorney fees is generally not available in contract actions and will be warranted only in an exceptional case.

(Emphasis added.) *Id.*

**{¶29}** Vandercar's contention is that from this emphasized language, we established that courts are bound to consider each of the six bad-faith categories identified in *Covenant Dove*. Thus, Vandercar argues that the court's application of *SST Bearing*, 2012-Ohio-2490 (1st Dist.), without considering each of the *Covenant Dove* categories, was a misapplication of the law.

**{¶30}** However, this contention is misguided. In *Vandercar I*, we relied on both *Covenant Dove* and *SST Bearing*, and recognized that *Covenant Dove* set forth factors from which a court *could* determine that a party acted in bad faith. *Vandercar I*, 2022-Ohio-3148, at ¶ 46 (1st Dist.), citing *Covenant Dove* at ¶ 7.

**{¶31}** In fact, a review of our holding in *Vandercar I* demonstrates that we

placed a greater reliance on *SST Bearing* than *Covenant Dove*. In *Vandercar I*, we noted that the court in *Avis Rent A Car Sys., LLC v. City of Dayton*, U.S. Dist. LEXIS 129516 (S.D.Ohio Sept. 25, 2015) found our holding in *SST Bearing* to be persuasive. *Vandercar I* at ¶ 53. And, in *Vandercar I*, we stated that we were following our holding in *SST Bearing* that a party may recover attorneys' fees upon establishing bad faith. *Id.* at ¶ 56.

**{¶32}** Vandercar misinterprets our holding in *Vandercar I* as an edict to trial courts that they must consider all of the categories identified in *Covenant Dove*. The categories in *Covenant Dove* serve as a nonexhaustive list of ways in which a court may classify conduct as bad faith. Nothing in *Vandercar I* reflects that we intended to bind the trial court to only consider *Covenant Dove's* bad-faith categories, or that we sought to prevent the trial court from considering *SST Bearing*.

**{¶33}** Having concluded that the court did not misapply the law, we next must determine whether the court abused its discretion.

### 2. *Bad Faith*

**{¶34}** Vandercar argues that the Port engaged in multiple instances of bad-faith conduct that entitled it to attorneys' fees. Vandercar frames this misconduct under the bad-faith categories enumerated within *Covenant Dove*, which include dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty due to an ulterior motive, ill will comparable to fraud, and intent to mislead or deceive. The alleged conduct at issue includes that the Port altered the language on its website, the Port adopted resolutions to frustrate Vandercar's ability to receive the Redevelopment Fee, the Port made inappropriate discovery requests about campaign contributions, the Port asserted irrelevant affirmative defenses that were never formally withdrawn, and the Port improperly denied requests for admissions.

12

**{¶35}** We cannot say that the trial court erred in finding that the conduct relied on by Vandercar fails to rise to such an exceptional level that it would warrant an award of attorneys' fees. The court determined that the conduct was innocuous or had no material impact on the outcome of *Vandercar I*. While Vandercar disagrees with the court's explanations, the ultimate decision of whether to award a party attorneys' fees is within the sound discretion of the trial court. *See Weckel*, 2024-Ohio-5111, at ¶ 96 (1st Dist.), citing *SST Bearing*, 2012-Ohio-2499, at ¶ 29 (1st Dist.) (We review a court's ruling on a motion for attorneys' fees based on a party's alleged bad faith for an abuse of discretion). Across all of Vandercar's allegations of the Port's misconduct, Vandercar alleges conduct from which reasonable minds could differ as to whether bad faith occurred. As we held in *Vandercar I*, findings that a party acted in bad faith are reserved for the most exceptional circumstances. The trial court did not abuse its discretion in finding that this was not one of those exceptional circumstances.

### 3. Civ.R. 37(C)(2)

**{¶36}** Vandercar also argues that it is entitled to attorneys' fees under Civ.R. 37(C)(3). Vandercar asserts that the Port improperly refused to answer two requests for admissions concerning the definition of "redevelopment." Because it was successful in *Vandercar I*, Vandercar contends that it is therefore entitled to an award of attorneys' fees.

**{¶37}** Appellate courts review a trial court's decision in pretrial discovery disputes for an abuse of discretion. *Evans v. Thrasher*, 2013-Ohio-4776, ¶ 35 (1st Dist.); *see Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996) ("The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these ruling for an abuse

13

of discretion.").

**{¶38}** Civ.R. 36 and 37 govern requests for admissions. Under Civ.R. 36, a party may request another party to admit the truth of any matter that relates to statements or opinions of fact or the application of law to fact. Whereas Civ.R. 37 governs the sanctions where a party fails to respond to a discovery request. Civ.R. 37(C)(3) states,

> If a party fails to admit what is requested under Civ.R. 36, and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney[s'] fees, incurred in making that proof. The court *shall* so order unless any of the following circumstances apply:
>
> (a) The request was held objectionable under Civ.R. 36(A);
>
> (b) The admission sought was of no substantial importance;
>
> (c) The party failing to admit had a reasonable ground to believe that it might prevail on the matter;
>
> (d) There was other good reason for the failure to admit.

(Emphasis added.)

**{¶39}** The court ultimately found that the Port's actions fell under the safe harbors within Civ.R. 37(C)(3)(a) and (C)(3)(c).[1] We review Vandercar's dispute with the application of each of these safe harbors in turn.

---

[1] We note that the Port contends on appeal that Civ.R. 37(C)(3)(d) also applies, however the trial court did not consider this argument. "An appellate court limits its review to issues actually decided by the trial court in its judgment." *Lycan v. City of Cleveland*, 2016-Ohio-422, ¶ 21, citing *Bowen v. Kil-Kare, Inc.* 63 Ohio St.3d 84, 89 (1992) (declining to rule on an issue not decided by the trial court).

a. Applicability of Civ.R. 37(C)(3)(a)

**{¶40}** Vandercar asserts that the court erred in finding the requests for admission objectionable. Vandercar takes issue with reliance on an objection that was not identical to the one raised by the Port as well as the legal validity of the Port's argument that the requests were objectionably vague.

**{¶41}** The court's paraphrasing of the Port's objection is benign. While the court's entry did not cite verbatim to the Port's objection, the court paraphrased the responses provided by the Port. Both addressed that Vandercar's request that the Port admit to a conclusive definition of "redevelopment" was objectionable. Any error in the court's rephrasing of the Port's objection does not amount to a reversible error.

**{¶42}** Likewise, Vandercar's argument attacking the Port's vagueness objection is incorrect. Vandercar draws this court's attention to *Glock, Inc. v. United States*, 736 F.Supp.3d 1279, 1293 (Court of International Trade 2024). The *Glock* court held that a party's objection on the basis of vagueness to requests to define a term common in an industry was inappropriate. However, not only is *Glock* not binding on this court, it does not stand for the proposition it is cited for by Vandercar. Instead, *Glock* simply provides a way in which a court may construe an objection.

**{¶43}** Vandercar's Civ.R. 12(C) motion identified several definitions for redevelopment and demolition. The multiplicity of definitions supplied by Vandercar demonstrates the objectionable vagueness within Vandercar's question. Therefore, we cannot say that the court's decision that the requests for admissions were objectionable constituted an abuse of discretion.

b. Applicability of Civ.R. 37(C)(3)(c)

**{¶44}** Vandercar argues that the court misconstrued Civ.R. 37(C)(3)(c). The court held that the Port had reason to believe it might prevail in the "matter," and

therefore satisfied Civ.R. 37(C)(3)(c)'s safe-harbor provision. Vandercar relies on *State ex rel. Maruer v. Sheward*, 71 Ohio St.3d 513, 521 (1994), for the proposition that when interpretating a statute, a word used more than once must mean the same in both instances.

{¶45} Both the body of Civ.R. 37(C)(3) and subsection (c) use the word "matter." First, in the opening paragraph: "If a party fails to admit what is requested under Civ.R. 36, and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses." And then in Civ.R. 37(C)(3)(c): "The party failing to admit had a reasonable ground that it might prevail on the matter." Below the court applied different interpretations of the word matter, once in reference to the entire litigation and later to the veracity of the disputed request for admission. This conflicts with *Maurer's* rule of statutory interpretation requiring consistent definitions.

{¶46} However, this amounts to a harmless error. Regardless of the applicability of Civ.R. 37(C)(3)(c), the court correctly determined that Civ.R. 37(C)(3)(a) applied.

{¶47} Accordingly, Vandercar's assignment of error challenging the court's denial of its motion for attorneys' fees is overruled.

## IV. Conclusion

{¶48} The Port's assignment of error challenging the grant of Vandercar's Civ.R. 60(B) motion is sustained, and Vandercar's assignment of error challenging the court's denial of its request for attorneys' fees is overruled. The judgment of the trial court granting Vandercar's Civ.R. 60(B) motion is reversed. The trial court's judgment denying Vandercar's motion for attorneys' fees is affirmed.

Judgment accordingly.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.